FILED
2025 Nov-17  AM 11:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## ALABAMA SOUTHERN DIVISION

| | | |
|---|---|---|
| **TOMEYKA D. PORTER** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No.: 2:23-cv-555-ACA** |
| | ] | |
| **FRANK BISIGNANO,**[1] | ] | |
| **Commissioner of the Social** | ] | |
| **Security Administration,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## <u>MEMORANDUM OPINION</u>

After Plaintiff Tomeyka Porter sustained a mild brain injury, she requested to work from home and to obtain other accommodations. Her employer, the Social Security Administration ("the Agency"), denied her request. She now asserts a claim against the Agency through Commissioner Frank Bisignano, for violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 and 794 ("the Rehabilitation Act"). (Doc. 1). The Agency moves for summary judgment. (Doc. 29). The court **WILL GRANT** the Agency's motion because Ms. Porter has not presented evidence that she was a "qualified individual" under the Rehabilitation Act.

---

[1] Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Bisignano is substituted as Defendant.

## I.    BACKGROUND

When ruling on a motion for summary judgment, the court "must construe the facts and draw all inferences in the light most favorable to the nonmoving party and when conflicts arise between the facts evidenced by the parties, [it] must credit the nonmoving party's version." *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024) (quotation marks omitted) (alterations accepted).

Ms. Porter worked as a claims examiner for the Agency. (Doc. 28-1 at 5). In this role, she analyzed, investigated, and made recommendations on whether individual claimants continued to qualify for disability benefits after they returned to work. (*Id*. at 6; doc. 28-5 at 3)

In June 2018, Ms. Porter was in a car accident that caused a mild traumatic brain injury. (Doc. 28-1 at 5; doc. 28-12 at 1). After the accident, she returned to work for about two weeks. (Doc. 28-1 at 7–8). During this time, she performed the essential functions of her job. (*Id*. at 7). However, Ms. Porter's coworkers, friends, and family noticed that she had issues with word-finding, memory, and maintaining appropriate moods. (*Id*.; doc. 28-14 at 7). As a result, Ms. Porter was hospitalized for several days. (Doc. 28-1 at 7, 22; doc. 28-14 at 7; doc. 28-20).

Ms. Porter never returned to work after she was released from the hospital. (Doc. 28-1 at 22). Ms. Porter's attending physician while she was hospitalized indicated that she could not return to work until she had a follow-up examination

with her outpatient physician, Dr. Aftab M. Kahn, in August 2018. (Doc. 28-20; doc. 28-21). Dr. Kahn determined that Ms. Porter's mild traumatic brain injury was causing "migraines, poor balance, mental confusion and paranoia, short term memory loss," and an inability to drive long distances. (Doc. 28-21). The letter indicated that Ms. Porter would be unable to work until cleared by a neurologist whom she would see in late October 2018. (*Id*.). Dr. Kahn wrote another letter stating that some of Ms. Porter's symptoms were improving, but she still could not drive long distances and was experiencing "some mental blocks." (Doc. 28-22 at 4).

On October 1, 2018, Ms. Porter sought permission to telework through a program called the Work at Home by Exception program ("WAHBE") (Doc. 28-2 at 10; doc. 28-22). WAHBE is intended "for employees who temporarily have difficulty commuting to work due to medical reasons, certified by a health care provider, but are still able to perform the duties of their position at home." (Doc. 28-5 at 3–4). The same day, Mr. Porter submitted an accommodation request. (Doc. 28-2 at 9; doc. 28-25). Reasonable accommodations are available to qualified individuals with a disability so long as the individual can perform the essential functions of her job with or without the accommodation. (Doc. 28-32 at 2–3).

The following day, Ms. Porter and her supervisor met about her accommodation request. (Doc. 28-25 at 1). Her supervisor's report about the meeting states that Ms. Porter requested telework and no complex cases as accommodations,

among other things. (*Id*.). Ms. Porter's supervisor wrote that Ms. Porter's medical conditions limit her job performance because "complex or difficult situations trigger confusion, hallucinations and anger," she was unable to complete assignments on time due to memory blocks, and complex tasks were problematic for her. (*Id*. at 1–2). Ms. Porter refused to sign the report because she did not agree that she responds to complex situations with hallucinations and anger. (Doc. 28-1 at 9, 11, 30). But she does not dispute the accuracy of the other statements in the report. (*See id*.)

During the meeting, Ms. Porter's supervisor requested further medical documentation in support of her accommodation request. (Doc. 28-23; *see also* doc. 28-25 at 2). In response, Ms. Porter submitted an October 5 letter from Dr. Kahn, which stated that Ms. Porter was improving but still unable to drive long distances, had some mental blocks, and suffered severe social anxiety. (Doc. 28-24; *see also* doc. 29 at 8 ¶ 25; doc. 33 at 3 ¶ 25). Dr. Kahn requested Ms. Porter be allowed to work from home performing "a job that requires her to only do simple 1, 2, 3-step instructions/commands" because Ms. Porter was unable to do any complex or detailed work. (*Id*.). Dr. Kahn requested that accommodation last until January 7, 2019, at which time Ms. Porter would be reevaluated. (*Id*.).

Ms. Porter's supervisor recommended that the Agency deny her accommodation request. (Doc. 28-25 at 4–5). He explained that, with regard to telework, "[a]s a trainee it would behoove you to have face to face contact with your

mentor. Secondly, the limitations outlined by your physician does not support working at home." (*Id.* at 5). As for exempting her from work on complex cases, he stated the Agency was "unable to remove the essential functions of the position." (*Id.*). Ms. Porter's supervisor offered to reassign her to another position, which Ms. Porter rejected. (*Id.* at 5–6). Ms. Porter attested that she rejected reassignment because she could not drive and doubted her ability to learn a new role with the brain injury. (Doc. 28-1 at 11).

On November 1, Ms. Porter contacted her supervisor about her WAHBE request. (Doc. 28-26). The following day, Ms. Porter's supervisor denied the WAHBE request and informed her that she would need a medical release to return to work. (Doc. 28-27 at 1).

The Agency denied Ms. Porter's accommodation request in January 2019. (Doc. 28-31 at 1–3). The letter explained that complex or detailed workloads are an essential function of the claims examiner position, and the Agency is not required to eliminate an essential function as a reasonable accommodation. (*Id.* at 2). The letter also relayed that the telework request was denied because granting the request would not address Ms. Porter's inability to perform her job. (*Id.*). Ms. Porter filed a reconsideration request, which was denied. (Doc. 28-34; doc. 28-35).

While Ms. Porter was waiting to hear about her accommodation request, she filed for disability retirement. (Doc. 28-13 at 3–6). In February 2019, Dr. Kahn stated

that in his "professional opinion, Ms. Porter is not able to sustain any type of gainful employment at this time." (Doc. 28-33). In a letter from August 2019, Dr. Kahn stated that Ms. Porter continued to suffer symptoms from the traumatic brain injury, and "[a]n expected date of full or partial recovery is unknown at this time." (Doc. 28-36). Dr. Kahn also stated that because Ms. Porter was not permitted to telework on simple assignments, she "is not able to sustain any type of gainful employment." (*Id.*). In September 2019, Ms. Porter's disability retirement application was granted, and she began receiving disability retirement income. (Doc. 28-6 at 4; doc. 28-13 at 1).

## II.    DISCUSSION

"Summary judgment is appropriate if the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Stalley*, 124 F.4th at 1282–83 (quotation marks omitted). To defeat a motion for summary judgment, "[t]he nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Calderon v. Sixt Rent a Car, LLC*, 114 F.4th 1190, 1199 (11th Cir. 2024) (quotation marks omitted).

Ms. Porter alleges discrimination in violation of the Rehabilitation Act under both 29 U.S.C. §§ 791 and 794. (Doc. 1 ¶¶ 54–60). The Rehabilitation Act provides

that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). "The standard for determining liability under the Rehabilitation Act is the same as that under the Americans with Disabilities Act; thus, cases involving the ADA are precedent for those involving the Rehabilitation Act." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). "To establish a prima facie case of discrimination under the Rehabilitation Act, an individual must show that (1) she has a disability; (2) she is otherwise qualified for the position; and (3) she was subjected to unlawful discrimination as the result of her disability." *Mullin v. Sec'y, U.S. Dep't of Veterans Affs.*, 149 F.4th 1244, 1251 (11th Cir. 2025) (alterations accepted). A plaintiff can show that she was subjected to unlawful discrimination by showing an employer failed its "affirmative duty to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," unless the accommodation would impose an undue hardship on the operations of the employer. *Id*.

The Agency does not dispute that Ms. Porter has a disability. (Doc. 29 at 14). But the Agency contends that Ms. Porter was neither "otherwise qualified" for the claims examiner position nor subject to unlawful discrimination because her requested

accommodations would not have allowed her to perform the essential functions of the position. (*Id*. at 14–15).

### 1.    Qualified Individual

The Rehabilitation Act prohibits discrimination against a "qualified individual," which is an "individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see* 29 U.S.C. §§ 791(f), 794(d). Accordingly, if an individual is unable to perform the essential functions of her job, even with an accommodation, her Rehabilitation Act claim fails. *See D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1229 (11th Cir. 2005) (citation omitted). An essential function of a positions means "the fundamental job duties of the employment position . . . and does not include the marginal functions of the position." *Id*. at 1230 (cleaned up).

The Agency contends that Ms. Porter is not a qualified individual because the claims examiner role requires processing complex or detailed workloads, which she cannot do. (Doc. 29 at 15–17). Ms. Porter responds that a genuine issue of material facts exists as to (1) whether an essential function of the job requires complex or detailed casework and (2) whether she could perform that work. (Doc. 33 at 13–19). However, Ms. Porter has not made a showing that could allow a reasonable jury to find on her behalf in either regard.

8

Ms. Porter has not raised a genuine issue of material fact as to whether an essential function of her job required complex or detailed casework. The parties largely agree on the fundamental duties of a claims examiner. It is undisputed that at least some of the functions of a claims examiner are "reviewing, investigating, and making recommendations and determinations in cases of Claimants who are receiving Disability benefits and have returned to work." (Doc. 28-5 at 3). It is also undisputed that this position requires analysis of a claimant's information to determine if the claimant continues to qualify to receive disability benefits. (Doc. 28-1 at 6; doc. 28-2 at 7; doc. 28-5 at 3). But the agency also provided evidence that the essential functions of the position require employees to "exercise judgment" to efficiently and timely make benefits determinations. (Doc. 28-2 at 7; doc. 28-7 at 5). This determination includes balancing several factors, such as income, medical condition, eligibility for trial work, potential fraud, and employer-provided subsidies. (Doc. 28-7 at 5; doc. 28-5 at 3). The Agency also maintained that completing these tasks requires handling a complex and detailed workload. (Doc. 28-5 at 3; doc. 28-2 at 17).

Ms. Porter did not provide evidence that contradicts the Agency's showing that a claims examiner's fundamental duties include complex, detailed, time-sensitive, and discretionary work. (*See* doc. 33 at 14–15). She highlights that the claims examiner position description states that "unusually complex cases may be referred to a higher-grade examiner." (*Id*.; *see* doc. 28-7 at 4). But this only underscores that the position

requires consideration of complex cases by referring out "unusually" complex cases. And the Agency presented unrebutted evidence that making the determination that a case should be referred to a specialist for further investigation requires analysis and independent judgment. (Doc. 28-2 at 7).

Ms. Porter argues that she provided evidence that claims examiners receive a mix of "hard and easy cases" and that she could be assigned a non-complex workload consisting of "'non-responders' workload, scanning documents, . . . and exporting documents into MS word." (Doc. 33 at 8 ¶¶ 11–20; doc. 28-19 at 7). But Ms. Porter admitted that scanning documents was not a large part of her role, and she may not be able to export documents to Microsoft Word because of ongoing eye treatment from her car accident. (Doc. 28-1 at 6). Although Ms. Porter provided evidence that "non-responder" work may not be complex and is likely an essential function of the job (*id*.; doc. 28-7 at 3), this does not negate that other essential functions of the job are complex, and employers are not required to eliminate essential functions of an employee's job. *Cf. Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1256 (11th Cir. 2007) (noting that "the ADA may require an employer to restructure a particular job by altering or eliminating some of its marginal functions.").

Because there is no dispute of material fact that a claims examiner's essential functions include complex and detailed work, Ms. Porter must raise a genuine dispute of fact as to whether she can perform those functions with (or without) an

accommodation. *See D'Angelo*, 422 F.3d at 1229. The Agency argues that Ms. Porter cannot raise a dispute of fact because her brain injury prevented her from working on complex or detailed work and her requested accommodations would not have allowed her to do that work. (Doc. 29 at 17–19).

The court agrees. The undisputed evidence shows that Ms. Porter could not perform complex and detailed casework even with accommodations. Beginning in October 2018 and continuing until Ms. Porter received disability retirement, Dr. Kahn consistently maintained that Ms. Porter "needs a job that requires her to only do simple 1, 2, 3-step instructions/commands" because she "is not able to do any complex or detailed work." (Doc. 28-24; doc. 28-36). No other expert or physician contradicted this determination. And although Ms. Porter highlights that she successfully performed her essential job functions for the two-week period after her car accident before she was hospitalized (doc. 28-1 at 7; doc. 33 at 13–14), no evidence supports the notion that she could do complex or detailed work after her hospitalization.

Despite Ms. Porter's contention otherwise (doc. 33 at 16–17), her testimony does not refute Dr. Kahn's recommendation either. When asked whether her brain injury affected her ability to perform the essential functions of her job, Ms. Porter responded that she did not know because she was not given the opportunity to attempt to perform her job with her requested accommodations. (Doc. 28-1 at 7). It is undisputed that the essential functions of a claims examiner can be performed remotely

and have been performed remotely by other employees. (Doc. 28-2 at 8; doc. 28-1 at 25). But Ms. Porter's request for simplified work would have eliminated an essential function of her job whether performed remotely or in person. *See id*.

Ms. Porter contends that she sought only to complete a simplified workload for three months before integrating back into a regular caseload. (Doc. 33 at 16–17). The court makes no determination as to whether requiring the Agency to adjust Ms. Porter's role for three months would be a reasonable accommodation, and instead highlights the undisputed evidence that Dr. Kahn continued to opine that Ms. Porter could not do complex or detailed work in August 2019—ten months after he initially recommended a simplified workload. (*Compare* doc. 28-36 *with* doc. 28-24).

Ms. Porter argues that the court should not consider Dr. Kahn's August 2019 letter, which was attached to her disability retirement application, as evidence that she could not perform her job under the Rehabilitation Act. (Doc. 33 at 16–17). The Supreme Court has specified that a claimant's assertion in a disability benefits application that she is too disabled to work does not create a presumption that the same claimant could not also perform the essential function of her job for reasonable accommodation purposes. *See Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 802–03 (1999). This is because the Rehabilitation Act, like the ADA, "defines a 'qualified individual' to include a disabled person who can perform the essential functions of her job *with reasonable accommodation*." *Id*. at 803 (quotation marks

omitted) (alterations accepted). But Dr. Kahn's letter indicates that Ms. Porter could perform the job only with an accommodation that eliminated an essential function of the job. The court considers the letter for that purpose.

To conclude, Ms. Porter has not created a genuine issue of material fact as to whether she was qualified for the claims examiner position because her traumatic brain injury prevented her from performing the essential functions of the job, even with an accommodation. Accordingly, she is unable to establish a prima facie case of discrimination under the Rehabilitation Act, and the Agency is entitled to judgment as a matter of law.

> 2.    Reasonable Accommodation

The Agency is also entitled to summary judgment because Ms. Porter has failed to create a genuine issue of material fact as to whether she was subjected to unlawful discrimination as the result of her disability when the Agency denied her accommodation request. *See Mullin*, 149 F.4th at 1251. An employer is required to provide only a "reasonable accommodation," which is an accommodation that "enables the employee to perform the essential functions of the job." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001); *see also* 28 C.F.R. § 42.511. As explained above, the accommodations that Ms. Porter sought would not allow her to perform the essential functions her job, and therefore, the Agency did not unlawfully discriminate in refusing to provide them. *See Frazier-White v. Gee*, 818 F.3d 1249,

1256 (11th Cir. 2016) (holding that an employer did not discriminate under the ADA by denying an employee an indefinite extension of a modified workload).

Ms. Porter argues that a heightened standard applies to federal government employers to provide a "reasonable accommodation." (Doc. 33 at 11–12). She contends that federal employers are subject two concurrent sections of the Rehabilitation Act: §§ 791(b) and 794. Section 791(b) requires federal agencies to submit an affirmative action plan to the Equal Employment Opportunity Commission regarding the hiring, placement, and advancement of individuals with disabilities in the agency. 29 U.S.C. § 791(b). Section 794 prohibits any employer receiving federal assistance from discriminating against an individual with a disability. *Id*. § 794(a). Other circuit courts have explained that this dual responsibility means that federal employers have a heightened obligation to provide reasonable accommodations to employees and affirmatively find positions within the agency for individuals with disabilities. *See*, *e.g.*, *Woodman v. Runyon*, 132 F.3d 1330, 1337–38 (10th Cir. 1997).

Even assuming federal employers have a heightened obligation to accommodate individuals with disabilities, Ms. Porter still "bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows her to perform the job's essential functions." *Mullin*, 149 F.4th at 1253 (alteration accepted). Ms. Porter's identified accommodations would not allow her to perform her job's essential functions. (*See* doc. 28-30 at 1–2). And the Agency affirmatively offered to reassign

14

Ms. Porter to another position, which she declined. (Doc. 28-25 at 6; doc. 28-1 at 11). Thus, the Agency did not subject Ms. Porter to unlawful discrimination, and it is entitled to judgment as a matter of law.

### III.    CONCLUSION

For the reasons stated above, the court **WILL GRANT** Defendant's motion for summary judgment and **WILL** enter summary judgment in favor of the Agency and against Ms. Porter. The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this November 17, 2025.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE